UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Lynette Maryea

    v.                                       Civil No. 13-cv-318-LM
                                               Opinion No. 2016 DNH 055

David Baggs, et al.


O R D E R


On June 9, 2010, two inmates at the Strafford County House of Corrections ("HOC") in Dover, New Hampshire assaulted Lynette Maryea, another inmate. Maryea brings federal civil rights claims and state law claims against Strafford County and Strafford County Department of Corrections ("DOC") officials based on their alleged failure to prevent the assault. Defendants have moved for summary judgment. Maryea objects.


Standard of Review

A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

Background

In June 2010, Lynette Maryea was an inmate at the HOC.
Maryea was housed in Unit A, a special housing unit for inmates
or pre-trial detainees with mental or physical disabilities.  On
or around June 4, Maryea informed staff members several times
that Annette Krikorian, another inmate, was harassing and
provoking her.  Maryea also informed staff that other inmates
had warned her "that something was going to happen" to her.
Maryea, however, was unable to provide any specific details to
staff concerning what was going to happen to her.  Although
Maryea provides no evidence identifying which staff members she
informed, she alleges that she told classification officers
Robert Metcalf, David Baggs, and Nicole Wilkins that she was in
"imminent danger."  Compl. (doc. no. 1-2) ¶¶ 31-33.

On June 9, Maryea informed classification officer William
Bryant that she was having issues with another inmate and did
not want to act out.  Bryant reported this conversation to
Lieutenant Gwen Weisgarber.  Weisgarber told Bryant to have
Maryea lock herself in her cell until Weisgarber could speak
with her.

When Weisgarber spoke with Maryea later in the day, Maryea
informed Weisgarber that she was having issues with Krikorian,
who was provoking her and instigating trouble with her.  Maryea
explained that she had tried to confront Krikorian concerning

these issues, but Krikorian had just yelled at her, called her names, and told her that she would fight.  Maryea also said that she thought Krikorian had some type of plan, but that she "didn't know what it was obviously."  Maryea Dep. (doc. no. 16) 12:2-7.  Maryea also explained that she did not fear Krikorian because Krikorian was so "little, I could snap her in half."  Weisgarber Decl. (doc. no. 11-5) ¶ 10.

In response, Weisgarber told Maryea that she should stay away from Krikorian to avoid getting into trouble.  She reminded Maryea that if a problem did occur, Maryea could lock herself in her cell.  Weisgarber also told Maryea that she should notify an officer if she was having an issue with Krikorian and should not try to handle anything herself.  Finally, Weisgarber told Maryea that she would speak with Baggs, a classification officer, and that they would work on a solution to the issues between Krikorian and Maryea.  Weisgarber did speak to Baggs and the two discussed options for resolving Maryea's concerns.

Maryea stayed locked in her cell for the rest of the day until later that evening when she left to get dinner.  At that time, Krikorian and another inmate, Ashley Leighton, assaulted Maryea.  Maryea alleges that the assault occurred in the kitchen.  Maryea concedes that there is no evidence that any defendant or other staff member witnessed the assault.  See Order (doc. no. 27) 2.

Maryea filed a complaint in state court alleging federal and state law claims against Strafford County, Weisgarber, Wilkins, Bryant, Metcalf, Baggs, and Lieutenant Donna Roy, the lieutenant that Maryea alleged was on duty during the assault.[1] Defendants removed the action to this court.  Maryea brought her federal claims under 42 U.S.C. § 1983 and premised them on the allegation that DOC officials were deliberately indifferent to Maryea's safety because they failed to prevent the assault.[2] Maryea brings state law claims against all defendants for negligence and against Strafford County for negligent hiring and supervision and respondeat superior.

At the time of the assault, the DOC had a policy, which required inmates with complaints about prison conditions to submit a grievance.  The grievance policy establishes a formal three-step process, including appeals, for the submission and resolution of written complaints.  Generally, the grievance policy requires an inmate to "file a written/formal grievance within fourteen . . . days of discovery of the grievable issue."

---

[1] Maryea also originally brought claims against Warren Dowaliby, the DOC's superintendent, and the DOC itself.  Those claims, however, were dismissed with prejudice based on the parties' joint stipulation.  See Stipulation for Dismissal (doc. no. 5).

[2] Maryea also brought a claim for deliberate indifference to her medical needs after the assault.  In her papers, Maryea states that she is no longer pursuing this claim.  Obj. (doc. no. 20) 1 n.1.

See Pelkie Decl., Ex. A (doc. no. 11-3) 2.  It also permits an inmate to make a "verbal/informal initial grievance" within seven days of the discovery of a grievable issue.  Id.  It is undisputed that Maryea failed to file a formal, written grievance concerning the assault.

## Discussion

Defendants filed two motions for summary judgment.[3]  The first motion (doc. no. 11) argues that Maryea failed to exhaust her administrative remedies, a requirement for inmates bringing federal claims, and that defendants are entitled to immunity on the state law claims under N.H. Revised Statutes Annotated ("RSA") 507-B:5 and 507-B:4, IV.  In the second motion (doc. no. 15), defendants argue that they are entitled to common law immunity on Maryea's state law claims and that Maryea has failed to adduce any evidence that creates a genuine issue of material fact entitling her to a jury trial on her federal claims.

---

[3] Neither of defendants' motions for summary judgment includes a "statement of material facts, supported by appropriate record citations," as is required under Local Rule 56.1(a).  Ordinarily, the appropriate remedy for such an omission is a denial of the motion.  Nevertheless, given the deadlines in this action and the lack of prejudice to Maryea caused by defendants' noncompliance, the court will not dismiss the motions based on L.R. 56.1.

Maryea has objected to both motions.[4]  Because, as discussed below, defendants' first motion for summary judgment disposes of Maryea's claims, the court need not address defendants' second motion.

I.   Exhaustion of Federal Claims

Defendants argue that they are entitled to summary judgment on Maryea's federal claims under the Prison Litigation Reform Act ("PLRA") because Maryea did not submit a grievance concerning the assault and therefore failed to exhaust her administrative remedies.  Maryea contends that she is excused from the PLRA exhaustion requirements.

A.   Legal Standard

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  To exhaust administrative remedies under the PLRA, a prisoner "must complete the administrative review process in accordance with the applicable

---

[4] While these motions were pending, Maryea's counsel filed a motion for leave to withdraw as her counsel (doc. no. 21).  That motion is also currently pending before the court.

procedural rules." Jones v. Bock, 549 U.S. 199, 218 (2007)
(internal quotation marks omitted).  The PLRA's exhaustion
requirement "applies to all inmate suits about prison life,
whether they involve general circumstances or particular
episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Congress enacted the PLRA's exhaustion requirement "to
reduce the quantity and improve the quality of prisoner suits."
Nussle, 534 U.S. at 524.  To achieve this purpose, the PLRA
"afford[s] corrections officials time and opportunity to address
complaints internally before allowing the initiation of a
federal case." Id. at 525.  "In some instances, corrective
action taken in response to an inmate's grievance might improve
prison administration and satisfy the inmate, thereby obviating
the need for litigation." Id.  And when a prisoner does proceed
with a lawsuit, requiring exhaustion can improve the quality of
that suit "by producing a useful administrative record." Bock,
549 U.S. at 204.

When an inmate fails to properly exhaust administrative
remedies, her federal claims are subject to dismissal under the
PLRA. Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st
Cir. 2002); Polansky v. McCoole, No. 13-CV-458-JL, 2016 WL
237096, at *7 (D.N.H. Jan. 20, 2016) (granting summary judgment
where inmate failed to exhaust administrative remedies).  If no
administrative remedies are available, however, exhaustion is

not required.  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir.
2005) (noting that "the statutory language [of the PLRA] does
not require exhaustion when no pertinent relief can be obtained
through the internal process").  Failure to exhaust is an
affirmative defense, Bock, 549 U.S. at 216, and, as such, it
"must be raised and proved by the defense."  Cruz Berrios v.
Gonzalez-Rosario, 630 F.3d 7, 11 (1st Cir. 2010).

    B.  Application

    Defendants move for summary judgment on Maryea's federal
claims, arguing that Maryea did not exhaust her administrative
remedies because she failed to file a grievance concerning the
assault.  Maryea concedes that she did not submit a grievance
regarding the assault.  She argues, however, that she is excused
from the PLRA's exhaustion requirement because there were no
administrative remedies "available" to her.  The DOC's
administrative remedies were unavailable, Maryea contends,
because once the assault occurred, those remedies could not
provide any "relief . . . regarding inadequate protection."
Obj. (doc. no. 16) 4.[5]

---

[5] Maryea contends that she properly submitted an initial
grievance because she informed staff before the assault about
Krikorian's harassment and the reported generalized threats.
Maryea's claims, however, concern the assault and, therefore,
the only question before the court is whether Maryea exhausted
her remedies with regard to the assault.  See Crosby v.
Strafford Cty. Dep't of Corr., No. 12-CV-383-LM, 2014 WL

To be "available" under the PLRA a remedial scheme need only provide prison officials authority to "take some action in response to a complaint." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 62 (1st Cir. 2002) (quoting Booth v. Churner, 532 U.S. 731, 736 (2001)); Johnson v. Thyng, 369 F. App'x 144, 149 (1st Cir. 2010). Consequently, an inmate must exhaust the entire administrative process, "regardless of the relief offered through administrative procedures." Booth, 532 U.S. at 741. That is so even when the relief offered might not personally benefit the plaintiff. See Medina-Claudio, 292 F.3d at 35-36 (holding that exhaustion is still required under the PLRA even when the inmate has been transferred to another institution); Ruggiero v. County of Orange, 467 F.3d 170, 177 (2d Cir. 2006) (requiring exhaustion because formal grievance might have "resulted in developing . . . policies and procedures pertaining to the grievance or disciplining the relevant officers") (quoting Braham v. Clancy, 425 F.3d 177, 183 (2d Cir. 2005)).

Here, defendants have submitted an affidavit from Bruce Pelkie, the current DOC superintendent, listing examples of the actions that DOC officials could have taken had Maryea filed a grievance after the assault. See Pelkie Decl. (doc. no. 17-1)

---

4385006, at *4 (D.N.H. Sept. 3, 2014) (holding that grievances predating an assault are not relevant to question of whether inmate grieved the assault).

¶¶ 3-8.  For example, Pelkie contends that DOC officials could have investigated Maryea's claims and disciplined any officers who did not adequately perform their duties.  Id. at ¶¶ 5-6. Pelkie also asserts that DOC officials could have moved Maryea, Krikorian, or Leighton for Maryea's future safety.[6]  Id. at ¶ 7. Finally, Pelkie asserts that DOC officials could have changed the DOC's procedures, policies, and training guidelines for the issues presented in Maryea's claims. Id. at ¶ 5.

There is no evidence in the summary judgment record refuting Pelkie's statements that DOC officials could have taken these actions had Maryea submitted a grievance concerning the assault.  Therefore, the DOC's administrative remedies were "available" under the PLRA, and Maryea was required to exhaust them.

To the extent Maryea argues that exhaustion was futile because DOC officials could not provide her preferred remedy of adequate protection, she is mistaken.  "[T]here is no 'futility exception' to the PLRA exhaustion requirement."  Medina-Claudio, 292 F.3d at 35.  Further, as discussed above, exhaustion provides prison officials the opportunity to resolve prisoner complaints and develop an administrative record for litigation.

---

[6] In her objection, Maryea contends that "once the assault occurred, [she] was separated from the attackers" and therefore "no longer required protection."  Doc. no. 16 ¶ 12.  That assertion, however, is supported by no record evidence.

Bock, 549 U.S. at 204.  Thus instead of being futile, Maryea's exhaustion of administrative remedies would have been beneficial not just to defendants, but also to Maryea's own prosecution of this action.  Therefore, Maryea is not excused from the PLRA exhaustion requirement based on futility.

Accordingly, Maryea has failed to exhaust the administrative remedies available to her, and as a result, the court must dismiss her federal claims.

II.  <u>State Law Claims</u>

Maryea brings state law claims against Strafford County and all six individual defendants.  Defendants move for summary judgment on these claims, arguing that they are barred under RSA 507-B:5 and 507-B:4, IV, which provide immunity to government actors.  Maryea objects and contends that the immunity statutes are inapplicable to her claims.

A. <u>Claims Against Strafford County</u>

Maryea brings claims for negligence, wrongful hiring, training, and supervision, and respondeat superior against Strafford County.  Defendants argue that they are entitled to immunity on those claims under RSA 507-B:5.  In response, Maryea contends that her claims fall within an exception to the immunity.

### i. Legal Standard

Under RSA 507-B:5, "[n]o governmental unit shall be held liable in any action to recover for bodily injury, personal injury, or property damage except as provided by this chapter or . . . may be provided by other statute."  A "governmental unit" is "any political subdivision within the state including any county."  RSA 507-B:1, I.  The governmental immunity provided under RSA 507-B:5 "immunizes the defendant from suit based upon the particular claims asserted by the plaintiff."  Lamb v. Shaker Reg'l Sch. Dist., 168 N.H. 47, 52 (2015).

RSA 507-B:2 creates an exception to governmental immunity under RSA 507-B:5.  RSA 507-B:2 provides, in pertinent part, that "[a] governmental unit may be held liable for damages in an action to recover for bodily injury [or] personal injury . . . caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises."

### ii. Application

Maryea does not dispute that Strafford County is a "governmental unit" and that her claims are "to recover for bodily injury [or] personal injury."  See RSA 507-B:1.  Maryea contends, however, that Strafford County is not entitled to

immunity because her injuries were caused by Strafford County's operation of the HOC premises.  See RSA 507-B:2.

That exception requires Maryea to show a causal nexus between her injuries and the operation of the jail's physical premises.  Lamb, 168 N.H. at 51.  In Lamb, the plaintiff sued a school district to recover for injuries her son suffered when another student tackled him during a recess football game.  Id. at 48.  The trial court dismissed the plaintiff's claim, holding that the school district was entitled to immunity under RSA 507-B:5.  Id.  The New Hampshire Supreme Court ("NHSC") affirmed, rejecting plaintiff's argument that RSA 507-B:5 was inapplicable because her son's injuries were caused by the school district's operation of the school premises.  Id. at 51-52.

In doing so, the NHSC held that the "RSA 507-B:2 exception to municipal immunity requires a nexus between the claim and the governmental unit's ownership, occupation, or operation of its physical premises."  Id. at 51.  The NHSC also expressly rejected the plaintiff's argument that the phrase "operation of . . . all premises" in RSA 507-B:2 included the "operation of a business or enterprises located on those premises."  Id. at 50.

Maryea provides no evidence of a nexus between her claim and Strafford County's operation of the physical HOC premises. To the contrary, the evidence that Maryea has submitted demonstrates that her injuries, just like those in Lamb, were

caused by independent actors and unrelated to the physical premises.  Thus, Maryea's claim is barred by RSA 507-B:5.

Maryea contends, however, that a nexus between her claims and the physical premises is unnecessary because the HOC is no "ordinary premises," in that its purpose is to allow Strafford County to supervise and confine inmates.  That argument is unavailing.  First, Maryea cites no authority to support the proposition that a facility's purpose is a basis for ignoring the rule that a plaintiff's claim must have a nexus to the defendant's <u>physical</u> premises.  Second, like the HOC here, the school in <u>Lamb</u> was also operated for the purpose of supervising others.  <u>See</u> <u>Gauthier v. Manchester Sch. Dist.</u>, 168 N.H. 143, 147 (2015) ("[S]chools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision.") (internal quotation marks omitted).

For these reasons, Strafford County is entitled to governmental immunity and judgment as a matter of law on Maryea's negligence claim against it.

A. <u>Claims Against Individual Defendants</u>

The individual defendants move for summary judgment on Maryea's negligence claims, arguing that they are entitled to

14

governmental immunity under RSA 507-B:4, IV.  Maryea objects,
contending that the immunity is inapplicable.

### i. Legal Standard

The immunity that protects governmental units under RSA
507-B:5 also protects government employees in certain
circumstances.  That protection is set forth in RSA 507-B:4, IV,
which provides that:

> If any claim is made or any civil action is commenced
> against a present or former employee, trustee, or
> official of a municipality or chartered public school
> seeking equitable relief or claiming damages, the
> liability of said employee or official shall be
> governed by the same principles and provisions of law
> and shall be subject to the same limits as those which
> govern municipal liability, so long as said employee
> or official was acting within the scope of his office
> and in good faith.

RSA 507-B:4, IV.

Maryea does not dispute that the individual defendants were
acting within the scope of their offices during the events at
issue.  Rather, Maryea contends that the individual defendants
are not entitled to governmental immunity because they did not
act in good faith.

As another court in this district has observed, RSA 507-
B:4, IV, does not define "good faith," and the NHSC has not had
the occasion to define that term for the purpose of the statute.
See Holm v. Town of Derry, No. 11-cv-32-JD, 2011 WL 6371792, at
*3 (D.N.H. Dec. 20, 2011).  Nevertheless, this court has

determined that the NHSC "would define the term 'good faith' in
RSA 507-B:4 as 'honesty in belief or purpose' and 'faithfulness
to one's duty or obligation.'" See Crosby v. Strafford Cty.
Dep't of Corr., No. 12-CV-383-LM, 2015 WL 3484912, at *6 (D.N.H.
June 2, 2015) (quoting Black's Law Dictionary 808 (10th ed.
2014)).  Therefore, to avoid summary judgment, Maryea must point
to evidence from which a factfinder could reasonably conclude
that the individual defendants failed to act with the honesty
and faithfulness required of good faith actions.  Id.

## ii. Classification Officers

Bryant, Baggs, Wilkins, and Metcalf (the "officer
defendants") move for summary judgment on Maryea's claim that
they negligently responded to her reports of Krikorian's
harassment and the generalized threats from other inmates.
The officer defendants contend that the undisputed facts in the
summary judgment record provide no basis from which a factfinder
could reasonably conclude that they acted in bad faith.

In response, Maryea argues that the officer defendants did
not act in good faith for two principal reasons.  First, Maryea
asserts that the officer defendants deliberately failed to
intervene during the assault.  Second, Maryea contends that the
officer defendants disregarded her complaints that she was being
threatened and harassed.

## 1. Failure to Intervene

Maryea argues that the officer defendants acted in bad faith because they "turned a blind eye" while Krikorian and Leighton assaulted her.  Maryea's argument is unpersuasive. Maryea makes no allegations in the complaint that any officer witnessed the assault and failed to intervene.  Order (doc. no. 27) 1.  Maryea also concedes that there is no evidence that any staff member, including the officer defendants, witnessed the assault.  Id. at 2.  Moreover, Maryea has not produced evidence that any of the officer defendants knew in advance about the assault and purposely avoided being nearby.  Accordingly, the undisputed evidence in the record provides no basis from which a factfinder could reasonably conclude that the officer defendants' failure to intervene in the assault was an exercise of bad faith.

## 2. Failure to Respond to Complaints

Maryea also argues that the officer defendants did not act in good faith because they disregarded her complaints and "did nothing to prevent the brutal assault."  Obj. (doc. no. 16) ¶ 21.  Defendants, however, have submitted evidence showing that Bryant took affirmative action in response to Maryea's complaints by passing them up the chain of command.  This

evidence rebuts Maryea's assertion that the officer defendants did nothing.[7]  Maryea, on the other hand, has produced no evidence that any of the officer defendants ever failed to acknowledge her complaints or showed any animus against her. Nor has Maryea pointed to any evidence from which a factfinder could conclude that the officer defendants acted dishonestly or without faithfulness to their duties and obligations.

Nevertheless, Maryea argues that the officer defendants' failure to "issue unit-wide warnings" concerning threats and harassment is evidence of bad faith.  Obj. (doc. no. 16) ¶ 21. In support of this argument, Maryea relies on Crosby, 2015 WL 3484912.  In Crosby, the plaintiff sued a classification officer who issued similar unit-wide warnings, alleging that the officer had placed him in danger because the warnings notified other inmates that the plaintiff had reported their misconduct.  Id. at *8.

In granting the Crosby defendant immunity under RSA 507-B:4, IV, this court held that the officer's warnings were not evidence of bad faith.  Id.  It did not hold, however, that such unit-wide warnings are a necessary condition for immunity under

_____

[7] Although defendants have produced evidence concerning only Bryant's response to Maryea's complaints, Maryea concedes that the other officer defendants' liability is coextensive with that of Bryant.  See Order (doc. no. 27) 1.

18

RSA 507-B:4, IV when a plaintiff complains about harassment or threats.  See id.  Indeed, this court acknowledged that the warnings in Crosby might have "had the unintended consequence of inciting" the attack on the plaintiff.  Id.  Given this potential unintended consequence, the court declines to hold that the lack of such warnings is evidence of bad faith.

Accordingly, there is no evidence within the summary judgment record from which a factfinder could reasonably conclude that the officer defendants did not act in good faith. For this reason, the officer defendants are each entitled to governmental immunity and judgment as a matter of law on Maryea's negligence claims against them.

### iii.  Weisgarber

Weisgarber moves for summary judgment on Maryea's claim that she knew Maryea was in imminent danger and failed to respond appropriately.  Weisgarber argues that the undisputed evidence in the summary judgment record provides no basis to conclude that she acted in bad faith.  In response, Maryea argues that Weisgarber acted in bad faith because she did nothing in response to Maryea's complaints except tell Maryea that she should "stay in her cell to avoid confrontation."  Obj. (doc. no. 16) ¶ 21.

The summary judgment record does not support Maryea's narrow account of Weisgarber's response.  In her declaration, Weisgarber states that she suggested multiple strategies for resolving Maryea's complaints, including staying away from Krikorian and notifying officers if she had a problem with another inmate.  Weisgarber also states in her affidavit that she spoke with Baggs to discuss other potential resolutions to Maryea's complaints.  Maryea, on the other hand, has produced no evidence disputing Weisgarber's declaration or showing that Weisgarber disregarded her complaints in any other way. Therefore, there is no evidence in the record from which a factfinder could reasonably conclude that Weisgarber acted in bad faith by disregarding Maryea's complaints.[8]

In addition, Maryea has produced no evidence from which a factfinder could reasonably conclude that Weisgarber acted dishonestly, disingenuously, or without faithfulness to her duties when responding to Maryea's complaints.  Although Maryea alleges that Weisgarber knew that she was in imminent danger, there is no evidence in the record that Maryea ever informed Weisgarber or any other staff member of a specific, imminent

---

[8] Maryea also contends that Weisgarber did not act in good faith because she failed to issue unit-wide warnings as was done in Crosby.  See 2015 WL 3484912, at *8.  For the reasons stated in the discussion of Crosby above, that argument fails.

threat to her safety.  See Maryea Dep. (doc. no. 16-1) 130:23-
131:3 ("I had also advised staff that I had been warned by other
inmates that something was going to happen to me but had no
details with respects to what"); (doc. no. 16-2) 12:2-6 ("I
spoke of [Krikorian] having some type of plan . . . I didn't
know what it was obviously.").

In short, while Maryea has produced evidence that she
complained about Krikorian's harassment and that Weisgarber's
response to those complaints did not prevent the assault, Maryea
has produced no evidence that Weisgarber failed to act in good
faith.  For this reason, Weisgarber is entitled to governmental
immunity and judgment as a matter of law on Maryea's negligence
claim against her.

### iv. Roy

Maryea brings a negligence claim against Roy, alleging that
she was the lieutenant on duty during the assault and should
have known that Maryea was in danger.  Maryea further alleges
that Roy failed to properly supervise the defendant officers.
Roy moves for summary judgment, arguing that there is no
evidence in the record that she failed to act in good faith.
The court agrees.

As an initial matter, Maryea only makes four generalized
allegations against Roy, all of which are limited to assertions

about what she knew or should have known.  The complaint

contains no allegations that Roy engaged in any specific

conduct, much less conduct that would constitute bad faith.  For

this reason, Maryea's claims against Roy cannot escape the

immunity provided under RSA 507-B:4, IV.  See Day v. Hurley, No.

12-CV-317-LM, 2014 WL 1794895, at *13 (D.N.H. May 6, 2014)

(granting summary judgment based on RSA 507-B:4, IV where

complaint did not allege bad faith conduct).

     Further, Maryea has not submitted any evidence concerning

Roy.  For example, there is no evidence in the summary judgment

record that Roy was the lieutenant on duty during the assault.

There is also no evidence that Roy had knowledge of Maryea's

complaints or that she ignored any malfeasance by the officers

under her supervision.  Simply put, there is no evidence in the

record from which a factfinder could reasonably conclude that

Roy was not acting in good faith while carrying out her duties

during the events at issue.

     Accordingly, Roy is entitled to governmental immunity and

judgment as a matter of law on Maryea's negligence claim against

her.

## Conclusion

     For the foregoing reasons, the court grants defendants'

first motion for summary judgment (doc. no. 11).  The court

denies defendants' second motion for summary judgment (doc. no. 15) as moot.  Maryea's counsel's motion for leave to withdraw (doc. no. 21) is terminated without prejudice.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 15, 2016

cc:   Tony F. Soltani, Esq.
      Corey M. Belobrow, Esq.